Mr. Justice Hasner
delivered the opinion of the court.
On the 27th of February, 1879, on application of the several plaintiffs, a justice of the peace issued warrants, directed .to the marshal of the District of Columbia, requiring him to summon in each case a jury of twenty citizens to assemble on the premises and assess the damages sustained by the plaintiffs, respectively, in consequence of the laying of the defendant’s railroad track along Sixth street. The marshal summoned the same twenty persons to appear in each case. The jury appeared at the time named, and the list of names was submitted by the marshal to the respective attorneys that they might strike from the list. The attorney for the railroad company objected to the proceeding as entirely illegal and .unauthorized, and refused, in behalf of the company, to strike any names from the list submitted. Thereupon, the counsel for the plaintiffs in the respective cases, struck off four names, and the marshal proceeded to strike a sufficient number of additional names to reduce the number to twelve. The same proceeding was adopted in each of the four cases in turn, and the jury rendered verdicts in each case in favor of the plaintiff therein, assessing the damages in different amounts.
On the 17th of March, 1879, the marshal made his return in each case to the court. The defendant filed exceptions in each case, and these exceptions have been certified to this court for determination in the first instance.
*80 First. It is insisted upon the part of the railroad company that the magistrate was without jurisdiction to issue a warrant in either case, upon the application of the plaintiff, as the statute under which he professed to act provided only for the issuing *of such warrant upon the application and. request of the railroad company.
The second section of the act of Congress of the 5th of February, 1867, authorizing the extension, &c., of a lateral branch of. the Baltimore and Potomac Railroad into and within the District of Columbia, provided that, before.the railroad company shall proceed to construct any railroad which they may lay out or locate over any land, &c., within the District, they shall first obtain the assent of the owner of- such laud, &c., “ or if such owner shall be absent from said District, or shall refuse to give such assent on such terms as said company shall approve, or because of infancy, cover-ture, &c., shall be legally incapable of giving such assent, then it shall be lawful for the said company to apply to.a justice of the peace for the' County of Washington, who shall thereupon issue his warrant directed to the marshal requiring him to summon a jury which should meet on the land and “ proceed to value the damages which the owner of such land will sustain by the use or occupation of the same required by the said company.”
The act of the 21st of May, 1872 (entitled, “An act to confirm the action of the board of aldermen and common council of the City of Washington, designating a depot site for the Baltimore and Potomac Railroad Company, and for other purposes ”), declared that “ the Baltimore and Potomac Railroad Company shall have the right to extend its track from Virginia avenue along Sixth street to the open grounds between Sixth street and B street north, and the canal, described as follows : ”
* * * “ The said company shall lay no more than two tracks along said Sixth street, and as near as practicable in the centre of said street: Provided, That the said company shall pay the owners of private property along the line of Sixth street, north of Virginia avenue by which the said *81 railroad passes, any damage which the said property may •sustain by reason of the laying of its track along the said Sixth street, and the said damages, if any, shall be ascertained in manner and form as provided by the act of Congress approved February 5,1867, &c.,it being understood that the ■question of damages herein referred to shall be confined to the question of appreciation and depreciation of -the valúe of the property situated along said street.”
The condemnation provided for in the act of 1867 applied to cases where the railroad desired to obtain- permission to lay out or locate its road over any land within the District, ■and failed to obtain the assent of the owner of such land, for any of the reasons therein set forth; in that case the company -was to make the application to a justice of the peace. But that proceeding was not to be resorted to by the company where the owner had already given his consent.
By the act of 1872, the United States, the owner of Sixth ¡street, expressly gave its consent to the location by the railroad company of its track along that street from Virginia avenue to B street. No inquisition, therefore, was necessary at the instance of the company, or of any one else, to obtain the assent thus already given for the laying of the track. But the act declared that the amount which the company should pay to the owners of private property along Sixth ■street, for any damage which said property might sustain by reason of the laying of the track along Sixth street, should be ascertained in manner and form as provided by the act of Congress of February 5,1867.
The inquiry thus authorized to be instituted was for a ■different purpose from that specified in the original law; although the form of an inquisition was adopted as a convenient mode of ascertaining the amount the company -should pay on account of “the depreciation of the value of the property situated along said street.”
It was certain that the only party who could complain of such damage would be the owner of the property, and that the company would never make application to inaugurate proceedings to cause itself to be mulcted in damages. The *82 act of 1872 nevertheless plainly contemplated such proceedings, and it cannot be concluded, by any fair construction, .that the inauguration of the proceedings by inquisition was. to rest only upon the pleasure of the company. Such a* construction would practically nullify all benefit that the-owners of property could claim under the law.
We think the Supreme Court of the United States, in Baltimore and Potomac Railroad Company vs. The Trustees of the Sixth Presbyterian Church, 1 Otto, 127, recognized the right of an owner of private property to proceed by inquisition under the act of 1872. In that case compensation was claimed by the trustees of the church against this company for the damage resulting to the church property from the laying of the tracks, and the magistrate, upon the-application of the trustees, issued the warrant under which judgment was given in favor of the church. After full argument, in which a number of objections were interposed on behalf of the company, the award was affirmed by the Supreme Court; which could not have been the case if the court had been of opinion that the w-hole proceeding was void, because not inaugurated by the company..
Second. It is insisted on behalf of the railroad company that inasmuch as the company had completed the laying of' its tracks along Sixth street about the 1st of July, 1872, and these warrants were issued nearly seven years after that date, the proceeding is barred by the statute of limitations.
The statute of limitations in force in this District, which is the Maryland act of 1715, chapter 28, section 2, declares that •“ all actions of trespass quare clausum fregii, all actions of trespass, detinue, sur-trover, or replevin for carrying away goods or chattels, all actions of account, contract, debt, book, or upon the case, other than such accounts as concern the trade or merchandise between merchants and merchants, their factors and servants, which are not residents within this province, all actions of debt for lending, or contract without specialty, all actions of debt for arrearages of rent, all actions, of assault, menaces, battery, wounding and imprisonment, or any of them, which shall be sued or brought by any person *83 or persons within tliis province, at any time after the end of this present session of assembly, shall be commenced or sued within the time of limitation hereafter expressed, and not after; that is to say, the said actions of account and the said actions upon the case, upon simple contract, book, debt, or account, and the said actions for debt, detinue, and re-plevin for goods and chattels, and the said action for trespass quare clausum fregit, within three years ensuing the causé of such action and not after, and the said actions on the case for words, and actions of trespass, of assault, battery, wounding and imprisonment, or any of them, within one year from the time of the cause of such action accruing, and not after.”
By section 6 it is declared that “ no bill, bond, judgment, recognizance, statute merchant, or of the staple, or other specialty whatsoever, except such as shall be taken in the name of our sovereign lord, the king, his heirs and successors, shall be good and pleadable or admitted in evidence against any person or persons in this province after the principal debtor and creditor have been both dead twelve years, or the debt or thing in action above twelve years standing,” &G.
The right to recover damages for the depreciation of the plaintiff’s propei’ty by the inquisition arises solely under the statute of 1872, and it is well settled that where the liability of a defendant is created, not merely by the act of the parties, but by the positive provisions of a statute, the plaintiff’s remedy is not barred by the statute of limitations. Angel on Limitations, sec. 8, p. 80.
It is equally -well settled that the statute of limitations will not be held to embrace any proceedings at law not therein enumerated. But in none of the provisions of our statute is allusion made to a proceeding by inquisition. The statute, in words, applies to “ all actions of trespass,” &c., and declares that said actions shall be brought within the designated periods. The proceeding by inquisition cannot be regarded as an action within the meaning- of the statute. It has been held that limitations is not a bar to proceedings by *84 way of distress for rent. Longwell vs. Ridinger, 1 Gill, 57. Nor to a suit against a sheriff for an escape. French vs. O’Neal, 2 Harris & McHenry, 401. Nor to a suit against a sheriff for a false return to a fieri facias. Newcomer cs. Needy, 2 Md., 19. Nor to a distress for taxes. Hogan vs. Ingle, 2 Cranch Cir. Ct. Rep., 354. So debt on an indenture reserving rent, is not within the statute. Angel on Limitations, sec. 87.
These decisions proceed upon the theory that the statute of limitations will not be extended to cases not expressly within its provisions.
In this case it was in the power of the railroad company itself to have insured the commencement of the proceeding within the three years. But having, during all this interval, availed itself of the grant and neglected any offer of compensation to the parties aggrieved, and taken no steps to expedite an examination of the extent of the injury, it cannot be permitted to avail itself of the delay for which the company itself may be justly held accountable. United States v. Clark, 96 U. S., 43.
Third. .It is objected that actions at law in behalf of these plaintiffs against this defendant are pending and undecided on the law side of this court, in respect of the identical matters and things complained of and set forth in these proceedings. If we are at liberty to consider the matters alleged in this exception as admitted, it is enough to say that the only recovery which could be had in those suits by the plaintiff would be in respect of temporary or transitory damages accrued up to the .time of the inception of ‘those actions; whereas this proceeding, which is not a suit in the sense of the law, is instituted to ascertain for all time the amount of permanent damage sustained by the plaintiffs. Whatever recovery might be had in those cases would be a proper subject for consideration by the jury on the inquisition, by way of reducing the amount of their award.
Fourth. We are of opinion that the action of the marshal in striking names from the panel on the refusal of the defendants’ attorney to perform this duty was perfectly *85 proper. Unless this was so, it would be possible in any ease for a party defendant to frustrate justice and prevent the rendition of a verdict by refusing to strike from the panel.
Fifth. There is no force in the objection that the same twenty jurors were presented as a panel in each case. The same panel serves at a long term of the court where a hundred cases may be tried. Practically the jury in each separate trial, however, is a distinct one.
Sixth. On its face the proceedings in each of these cases are regular, and the presumption of course would be that the jury acted properly. We cannot, therefore, consider the objections as to whether a sufficient number of witnesses were sworn or examined as to the amount of the alleged •injuries.
Seventh. These are all the exceptions which are common to all the cases ; but in the case of Springman another objection is interposed which we think is well founded. It appears that at the time the track was laid the property now owned by Springman belonged to other pei’sons, and was conveyed to him subsequently. In our opinion he is not entitled to recover damages for the depreciation of the property by the laying of the track; both upon principle and authority.
In Mills on Eminent Domain, chap. 8, sec. 66, the author says: “A claim of damages and a title to land may be distinct. Damages for taking and injury to land belong to the owner at the time of the injury, and do not pass to a subsequent vendee. The owner alone can take advantage of a claim for damages, and if he does not claim, his subsequent-vendee cannot.”
In 11 Richardson’s South Carolina Reports, 91, Lewis vs. Wilmington and Manchester Railroad Company, it is said: “ The right to claim compensation from the railroad for land taken from the track of their road belongs to the owner of the track at the time the road was finished through it, or to his legal representatives, and not to a vendee who purchased the track from the owner after the road was finished though it.”
*86 So in 26 Vermont, 670, Rand vs. The Town of Townshend, where an owner of land brought an'action against the township for the value of land condemned for the road. It appeared that the road was not ready for use or open to the public at the time the claimant purchased the land, although it had been laid down before his purchase. The court say: “ "We think the owner of the land at the timé the road is laid out is the person, and the only person to bring this petition.” See also 1 Redfield on R. R., 350, 376.
It is but fair to presume that Springman, at the time of the purchase, took into consideration the depreciation which had taken place in the value of the property in consequence of the laying of the track, and that he obtained the property for a lower price in consequence of this depreciation.
It would be, therefore, inequitable that he should be allowed for that a second time by an award in his favor on this inquisition.
, It results from these views that this exception in Spring-man’s case is ruled good and those in the three other eases are overruled and the awards as to them affirmed.